1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

TARA L. RICHERSON,

11

                                          CASE NO.      C07-5590 JKA

12          Plaintiff,

              v.                          Order:
                                          (1)Granting Defendant's Motion
13                                        for Summary Judgment;
                                          (2) Denying Plaintiff's Cross-
    JEANNE BECKON, in her individual      Motion for Partial Summary
14  capacity, and official capacity as Executive   Judgment
    Director of Human Resources for the Central
15  Kitsap School District,

16                Defendant.

17

18          This matter comes before the court on Defendant's Motion for Summary Judgment, and Plaintiff's

19  Cross-Motion for Partial Summary Judgment.    The court has considered all materials submitted in

20  support of and in response to both motions as well as the files and records herein.

21          Plaintiff seeks injunctive relief for restoration of her position as Curriculum Director for the Central

22  Kitsap School District.  She also seeks damages pursuant to 42 U.S.C 1983 for alleged violation of her

23  civil rights by virtue of her reassignment of duties with  the Kitsap County School District.  Plaintiff claims

24  her duties as a District employee were reassigned in retaliation for the exercise of her First Amendment

25  free speech rights exercised through a blog (http://whatitslikeontheinside.blogspot.com) regarding her

26  observations as an employee of  the Central Kitsap School District.  Defendant alleges (a) plaintiff's speech

27  leading to her reassignment of duties is not covered by the First Amendment because it does not address

28  matters of "public concern"; (b) even if covered by the First Amendment the speech was not "protected

1  speech," as the interests of the District far exceed the plaintiff's interest in the speech in question; and (c)

2  even if protected,  the defense of qualified immunity precludes recovery.

3                                              **FACTS:**

4          There is little, if any, dispute regarding the facts. In May of 2007, plaintiff was advised that she

5  would be transferred to a new position half time as a curriculum specialist and half time with a new

6  instructional coaching model.  Plaintiff was pleased with this reassignment.

7          The instructional coach component of the job gave plaintiff the opportunity to work with teachers

8  to enhance their professional development.  The role of the coach is to develop a "trusting" and

9  "confidential" relationship with the classroom teachers they coach.  The coach is not an evaluator.  The

10 mentoring is individualized in order to assist teachers in implementing and mastering new teaching

11 practices.  The relationship between the teacher and the coach is sensitive to the extent that the coach must

12 be trusted and seen as supportive in assisting the teacher's professional development.

13         The Job-Embedded Coaching Model utilized by the District explains the respective roles of the

14 coach, the teacher, and the Principal.  With regard to the relationship between the coach and the teacher

15 the following excerpts from the model are pertinent to this inquiry: (1) "Coaches will not discuss the

16 performance or support needs of individual teachers without permission from the teacher"; (2) "Coaches

17 have a **peer** relationship with teachers that is *non-evaluative and confidential. Trust is a critical*

18 *component in this relationship.  In order to maintain trust, all classroom visits and discussions between*

19 *the coach and individual teachers remain confidential* (court added emphasis)"; (3) "Communication

20 between the instructional coaches, teachers, and building administrators is encouraged and ideally would

21 take place with all parties present.  **No surprises!".**

22         In early June district administration officials became aware of an entry in plaintiff's blog regarding

23 the qualifications of the person hired to assume duties the plaintiff would be relinquishing in order to take

24 over the responsibilities of her new assignment.  Plaintiff was a member of the interview team utilized in

25 the process of selecting her replacement. The entry reads in part as follows: (Doc.#11, p. 6, lines 3-9):

26                 Save us White Boy!

27                 I  met with the new me today: the person who will take my summer work and make it a full-
                   time year-round position.  I was on the interview committee for this job and this guy was
28                 my third choice ... and a reluctant one at that.  I truly hope that I have to eat my words

about this guy. . . . But after spending time with this guy today, I think Boss Lady 2.0 made the wrong call in hiring him . . . He comes across as a smug know-it-all creep.  And that's probably the nicest way I can describe him. ... He has a reputation of crapping on secretaries and not being able to finish tasks on his own. ... And he's white.  And male.  I know he can't help that, but I think the District would have done well to recruit someone who has other connections to the community. ... Mighty White Boy looks like he's going to crash and burn.

On June 8 and 11, defendant Jeanne Beckon (Executive Director of Human Service for the school district) met with plaintiff, confirmed the source of the blog entry, and verbally reprimanded plaintiff for violating the confidentiality expected of a member of an employee interview team. Thereafter a confirming memo was sent plaintiff and placed in her personnel file.  Plaintiff was not asked to stop blogging, but rather reprimanded for her "breach of the expectations of confidentiality and the professional standards and practices of the district."

Thereafter, Cheryl Brown, a district teacher and lead union negotiator wrote the District Superintendent complaining about specific entries she had discovered in reading plaintiff's blog, asking that plaintiff be told she was not to write on her blog what could be construed as a personal attack on Brown. The blog entry of concern to Brown was critical of the Central Kitsap Education Association (teachers' union). It included the following statement: "What I wouldn't give to draw a little Hitler mustache on the chief negotiator."  On June 26, 2007, defendant Beckon advised  plaintiff she was being involuntarily reassigned from her duties as a K-12 science curriculum specialist and beginning teacher mentor program coordinator.   Plaintiff's new assignment was that of a classroom teacher.  Again, there was no request that plaintiff cease blogging.

Defendant, Beckon, seeks summary judgment of dismissal alleging (1) Qualified Immunity because the speech leading to the transfer or reassignment is not covered by the First Amendment as it does not address matters of "public concern'; (2) even if covered by the First Amendment it is not protected speech under the Pickering balancing test; and (3) even if protected the law regarding public-employee free speech is insufficiently clearly established to preclude the qualified immunity defense.

Plaintiff, Richerson, seeks partial summary judgment on the issue of liability under 42 U.S.C. 1983, alleging that (1) the defendant is not protected by qualified immunity; (2) plaintiff's blog entries "substantially  involved matters of public concern"; (3) the blog entries are "protected speech" under the First Amendment; and (4) that defendant should be held liable both in her individual and official capacity.

1

**LAW**

**1.  Is plaintiff's speech protected by the First Amendment and/or Protected Speech?**  Plaintiff acknowledges that the government has "a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large," Waters v. Churchill, 511 U.S. 661 (1994).  Public employees, however, do not lose their rights as citizens to participate in public debate by virtue of their government employment so long as their speech addresses matters of "public concern." Connick v. Myers, 461 U.S. 138 (1983).  Both sides refer the court to the test in Pickering v. Bd. of Educ., 391 U.S. 563 (1968) and it's well established balancing test.  Pickering, a teacher, was fired for sending a letter to a local newspaper criticizing the way the School Board and Principal had handled proposals to raise moneys for the School District.  In reversing the lower courts' approval of Pickering's dismissal, the Supreme Court said:

> "The theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.  At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.  The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

Although the Pickering court concluded that Pickering made false statements there was insufficient evidence that they were detrimental to the fund-raising issue as they were made after the controversial proposed tax-increase had been defeated at the polls.  In the case at bar, the concern of the defendant was prospective, i.e. that plaintiff's self proclaimed role as a personality reporter of school personnel would affect her ability to maintain the code above set forth for mentoring fellow teachers with trust and confidence.

Guidance from the Ninth Circuit offers a number of factors to consider in the balancing process.  They include the following inquiries: (a) does the speech impair discipline or control by superiors; (b) disrupt co-worker relations; (c) erode close working relationships premised on personal loyalty and confidentiality; (d) interfere with the speaker's performance of his or her duties; or (e) obstruct routine office operations. Fazio v. City & County of San Francisco, 125 F.3d 1328 (1997).  Certainly the proposed mentoring relationship between plaintiff and other teachers had she not been reassigned would suggest

severe difficulties when measured against (b), (c), and (d) above.

1    No teacher who was aware of the attack on "White Boy" set forth above could possibly be

2   expected to enter into a trusting, mentoring, confidential relationship with an instructional coach who had

3   revealed the  substance of a teaching position interview as did plaintiff.  This conclusion is not imagined,

4   but real (see Nicholson Declaration).  Not only was the blog set forth above a breach of confidentiality, it

5   was racist, sexist, and bordered on vulgar.  It lent absolutely nothing to the types of public concern issues

6   contemplated by Pickering and it's progeny.  Nonetheless, the District did not terminate plaintiff or reassign

7   her duties following this salacious mean spirited behavior.  Rather she was reprimanded and cautioned.

8   Plaintiff next attempted to address an issue that might be considered a matter of legitimate public concern,

9   i.e. operation and management of the public schools.  Plaintiff, in her seemingly relentless efforts to

10  personalize attacks on specific individuals was apparently unable to resist her desire to ridicule Ms. Brown

11  with "fascist" label and "mustache" reference.  Though not a breach of confidentiality, these "Hitler" and

12  "mustache" remarks far exceeded normal standards of decency and no relevance to the issue of "public

13  concern" plaintiff suggests she was addressing.  The implications are obvious; and to those within the

14  District, the target is known.  Plaintiff's inability to control her rage and/or passion at the least justifies the

15  reassignment of her duties so as not to expose teachers wanting to improve their classroom skills to

16  potential exposure on plaintiff's blog.  The speech in question does, therefore, not meet the "public

17  concern" test and is not protected.

18    **2.  Does Qualified Immunity apply?**  Although the court's conclusion that plaintiff's blogging

19  activities in this instance are not protected as matters of "public concern," the court will nonetheless

20  address the issue of qualified immunity.  An officer who reasonably, but mistakenly, believes his or her

21  conduct does not violate a clearly established right is entitled to qualified immunity.  Saucier, 533 U.S. at

22  201. The Ninth Circuit in Brewster v. Board of Ed. Of the Lynwood Unified School District, 149 F.3d 971,

23  Ninth Cir. (1998) has articulately capsulized the application of Pickering in this context:

24    The court has observed that the Pickering test "requires particularized balancing on the unique facts
      presented in each case, . . . and the Supreme Court has specifically stated that the Pickering balance

25    is a "difficult" one to strike . . . Because, under Pickering, the determination whether an employee's
      expression is constitutionally protected requires a fact-sensitive, context-specific balancing of

26    competing interest, the law regarding public-employee free speech claims will "rarely, if ever be
      sufficiently 'clearly established' to preclude qualified immunity under Harlow and its progeny . .

27    "[I]f the existence of a right or the degree of protection it warrants in a particular

28    context is subject to a balancing test, the right can rarely be considered 'clearly established' at least
      in the absence of closely corresponding factual and legal precedent."

1    Certainly in this case, the actions of the District were graduated and relatively minimal.  The first

2 event was dealt with by way of a reprimand.  The second was clear evidence that the plaintiff would not

3 restrain her non "public concern" activity, and even then the District chose reassignment of job duties rather

4 than dismissal.  There is nothing retaliatory or pretextual about the defendant's explanation for the

5 reassignment.  Knowingly violating a constitutional protection would constitute a waiver of qualified

6 immunity, but there is no evidence of a policy to violate or a policy violation or that defendant Beckon was

7 a "policy maker."

8                                                        **ORDER**

9    **Defendants' Motion for Summary Judgment of dismissal of all claims against Jeanne Beckon**

10 **in her individual and official capacity is hereby granted.  Plaintiff's cross motion for Summary**

11 **Judgment is denied.**

12                              March 27, 2008

13                              */s/ J. Kelley Arnold*
                               J. Kelley Arnold, U.S. Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 6